**EXHIBIT  A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DONGMEI LI,

                Plaintiff,

   -against-

APPLE INC.;
STEVE JOBS, Chief Executive Officer of Apple Inc.;
AT&T INC.,

                Defendants.
-------------------------------------------------------------X

CASE NO 07-CV-4005

**COMPLAINT**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

1. This is a civil action in which the plaintiff, DONGMEI LI, seeks relief for the defendants' violation of her rights secured by 15 U.S.C. §§ 13, 13a, 14, 45(a)(1), and 47 U.S.C. § 202.

## JURISDICTION

2. This action arises under 15 U.S.C. §§ 13, 13a, 14, 45(a)(1), and 47 U.S.C. § 202.

3. Jurisdiction is conferred upon this Court by 15 U.S.C. § 15, this being an action seeking redress for price discrimination, discrimination in rebates, underselling, sale on agreement not to use competitor's goods, unfair and deceptive acts and practices, telecommunications charges or service discrimination.

4. Plaintiff's claim for damages is authorized by 15 U.S.C. § 15. Plaintiff further invokes this Court's pendant jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy. Plaintiff demands a trial by jury on each and every one of her claims as pled herein.

## VENUE

5. Venue is proper for the United States District Court for the Eastern District of New York pursuant to 15 U.S.C. § 15 because defendants have agents in Nassau County and Queens County.

## PLAINTIFF

6. The plaintiff, DONGMEI LI, is a permanent resident, and is and was at all times relevant herein residing in the County of Queens, State of New York.

1

# DEFENDANT(S)

7. The defendant, APPLE INC. ("Apple"), was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of California, having a retail store in the State of New York for the transaction of business in New York at 630 Old Country Rd., in Garden City, County of Nassau, State of New York. Apple is headquartered at 1 Infinite Loop, Cupertino, CA 95014.

8. The defendant, STEVE JOBS, is and was at all times relevant herein, the Chief Executive Officer of Apple, whose principle work address is at 1 Infinite Loop, Cupertino, in Silicon Valley, State of California. Defendant employs an agents for the transaction of business in New York at 630 Old Country Rd., in Garden City, County of Nassau, State of New York.

9. The defendant, AT&T Inc. ("AT&T"), was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of Texas, having a retail store in the State of New York for the transaction of business in New York at 39-09 Main St., Flushing, County of Queens, State of New York. AT&T is headquartered at 175 E. Houston, San Antonio, TX, 78205.

# STATEMENT OF FACTS

10. On June 29, 2007 at 6:00 PM, Apple started selling its newest product, iPhone, in two models, an 8 gigabyte ("GB") model and a 4 GB model. Apple hyped up iPhone and indicated that it is a revolutionary product long before iPhone's debut.

11. On or about July 2, 2007, Plaintiff went to one of Apple's retail stores to purchase an 8 GB iPhone for $599. Plaintiff waited on line for hours. When it was her turn, she was told that the 8 GB iPhones were sold out and that only the 4 GB iPhones remained. She purchased the 4 GB iPhone for $499.

12. Plaintiff had to sign up for a two-year contract with AT&T to have wireless service on her new iPhone because AT&T has received an exclusive contract from Apple to be the iPhone's sole wireless service provider.

13. Some customers were told to switch their existing AT&T account to a more expensive plan designed for iPhone in order to activate the phone. *See* Markoff, John, *For iPhone, Some Shortages and Activation Problems*, New York Times (July 2, 2007).

14. On August 24, 2007, George Hotz broke the iPhone code thereby allowing later purchasers of iPhone to subscribe their iPhone with other carriers of wireless service.

15. Apple's stock prices were on the rise on and before September 5, 2007.



Chart based upon compilation of stock closing prices. See *AAPL: Historical Prices for Apple Inc.*, Yahoo! Finance (Sept. 24, 2007), *at* http://finance.yahoo.com.

16. On September 5, 2007, about two months after iPhone's debut, Apple announced the company was cutting the price of its 8 GB iPhone.

17. Apple also announced that it would no longer produce the 4 GB version on September 5, 2007.

18. Apple insisted that the price cut had been planned long ago and explained that cutting the price only after two months of iPhone's debut is to fit in the holiday season to broaden the market. *See* Markoff, John, *Apple Cuts iPhone Price Ahead of Holidays*, New York Times (September 6, 2007).

19. Many buyers reacted angrily to Apple's price cut. *See iPhone Price Cuts Lead to iAnnoyed iCustomers*, WRAL (Sept. 8, 2007), *available at* http://www.wral.com/business/blogpost/1792406/.

20. On September 14, 2007, Apple offered various rebates to early iPhone purchasers.

21. Apple's price reduction has hurt early purchasers' competition with Apple because they cannot resell it for as high a profit as they could have before the price cut.

22. Apple's price reduction has hurt early purchasers' competition with later purchasers because they cannot resell their iPhones for as low a price as later purchasers may.

## STATEMENT OF CLAIMS

### FIRST CLAIM

**(Violating 15 U.S.C. § 13
Price Discrimination)**

23. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 22 as is fully set forth herein.

24. Apple discriminated in price between early purchasers of the 8 GB iPhone and later purchasers of the 8 GB iPhone because within just two months after Apple sold its 8 GB iPhone for $599, it reduced its price by $200 to $399.

25. Apple sold its iPhones in the course of commerce.

26. Apple sold its iPhones for use in the U.S.

27. Early purchasers competed with later purchasers for the iPhone.

28. Apple's discrimination in price between early and later purchasers substantially caused the early purchasers to be injured because early purchasers cannot resell their iPhones for the same profit as later purchasers.

29. Market conditions did not require Apple to change its price. iPhone was selling very well because Apple's stocks were increasing since August 16, 2007 and rose as high as $144.16 on September 4, 2007, the day before Apple announced that it was cutting the price of iPhone. *See* Yahoo! Finance, *supra* ¶ 14.

### SECOND CLAIM

**(Violating 15 U.S.C. § 13a
Discrimination in Rebates)**

30. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 29 as is fully set forth herein.

31. Apple is engaged in commerce.

32. Apple discriminated in rebates between people who purchased iPhones before August 22, 2007 and people who purchased iPhones in the period of August 22 to September 4, 2007.

33. Purchasers in the period of August 22 to September 4, 2007 are protected by Apple's

4

"price protection policy," whose terms and conditions are that they can get a refund or credit of the difference between the price they were charged and the current selling price. Therefore, the purchasers in this period can get full $200 back. *See Apple Sales and Refund Policy*, Apple Inc. (September 24, 2007), *at* http://store.apple.com/Catalog/US/Images/salespolicies.html.

34. Purchasers before August 22, 2007, however, can only get $100 store credit to purchase anything from the store other than iTunes. *See Today in Business*, Bloomberg News (September 15, 2007).

35. Apple discriminated in discount between early purchasers of the 4 GB iPhone and later purchasers of the 8 GB iPhone because within just two months after Apple sold its cheaper 4 GB iPhone, it stopped production of its cheaper iPhone model.

36. The difference in the rebate that Apple offers early purchasers of 8 GB iPhone discriminates against early purchasers of the 4 GB iPhone because they are offered less favorable terms.

37. The difference in discount that Apple offered early purchasers of 4 GB iPhone and later purchasers discriminates against later purchasers because they cannot obtain the same quality cellular phone at the lower price.

38. Apple knew of the discrimination in discount and rebates by offering the differential discounts and rebates.

## THIRD CLAIM

### (Violating 15 U.S.C. § 13a
### Underselling)

39. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 38 as is fully set forth herein.

40. Apple is engaged in commerce.

41. Apple's current price of $399 for its iPhone is unreasonably low.

42. The costs for Apple to make the 8 GB iPhone are higher than the current sales price.

43. The price of the iPhone when it debut is a more reasonable price.

44. Apple is selling its iPhone for an unreasonably low price to hurt competition between early and later purchasers so that the early purchasers cannot resell for as high a profit as they could have without the price cut.

45. Apple is selling its iPhone for an unreasonably low price to hurt the competition that

5

purchasers pose to it from reselling their iPhones.

## FOURTH CLAIM

### (Violating 15 U.S.C. § 14
### Sale on Agreement Not to Use Competitor's Goods)

46. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 45 as is fully set forth herein.

47. Apple has an exclusive agreement with AT&T to distribute iPhone using only AT&T's cellular network. Apple sold iPhone to early purchasers on the condition that purchasers sign up for a two-year wireless service agreement with AT&T. Apple encoded iPhone so that early purchasers could only use AT&T as the carrier of wireless service for its iPhone.

48. The effect of Apple and AT&T's prevention of early purchasers from subscribing their iPhones with other carriers of wireless service was to lessen purchasers' choice of wireless service carriers. Thus Apple and AT&T created a monopoly on carriers for the iPhone.

49. Since George Hotz broke the encryption, purchasers since August 24, 2007 can subscribe their iPhones with other wireless service carriers.

50. Apple and AT&T injured early purchasers by forcing a two-year service agreement upon them with unfair terms, which later purchasers can avoid.

## FIFTH CLAIM

### (Violating 15 U.S.C. Sec. 45(a)(1) defined in 15 U.S.C. Sec. 45(n)
### Unfair and Deceptive Acts and Practices)

51. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 50 as is fully set forth herein.

52. Early purchasers of iPhone paid an extra $200 for the same product than purchasers two months later.

53. Early purchasers are stuck with two-year wireless service contract with AT&T because it was the condition for the purchase of the iPhone.

54. Early purchasers of the 4 GB iPhone were denied the option of purchasing the 8 GB iPhone, which has more memory capacity, because on just a few days after iPhone debut, Apple told purchasers that 8 GB were sold out and that they could only purchase the 4 GB. Apple did not tell purchasers when more 8 GB iPhones would be produced.

55. Apple has devalued the 8 GB iPhones that early purchasers bought by lowering its price $200 just two months after their purchase.

56. Apple has devalued the 4 GB iPhones that early purchasers bought by stopping further production of the 4 GB model just two months after their purchase.

57. Plaintiff suffers substantial injury when Defendants have planned the price cut early and chose not to disclose the information.

58. Early purchasers of the 4 GB iPhone cannot switch to the 8 GB iPhone because it would result in the loss of their investment due to the large price differential between the price of iPhone when it debut and its current price.

59. Early purchasers of the iPhone cannot switch carriers because Apple and AT&T forced early purchasers to enter into a two-year wireless service contract.

60. The injury to early purchasers of iPhone is not outweighed by the lower prices that later purchasers enjoy because Apple did not need to injure the early purchasers to provide this benefit to later purchasers. Apple could have offered the same lower price to early purchasers and allowed all consumers to benefit from the lower price.

61. Apple's price reduction has hurt its competition with early purchasers because they cannot resell it for as high a profit as they could have before the price cut.

62. Apple's price reduction has hurt early purchasers' competition with later purchasers because they cannot resell their iPhones for as low a price as later purchasers may.

## SIXTH CLAIM

**(Violating 47 U.S.C. § 202
Telecommunications Charges or Service Discrimination)**

63. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 62 as is fully set forth herein.

64. AT&T is a common carrier.

65. AT&T sold its wireless service in connection with the unjust and unreasonable higher prices of iPhone to early purchasers.

66. Defendant AT&T imposed contract and $175 early-termination fees to plaintiff, prevent plaintiff from using other like communication service is unfair and deceptive.

## SEVENTH CLAIM

**(Violating General Business Law of the State of New York § 349
Consumer Protection from Deceptive Acts and Practices)**

67. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 66 as is fully set forth herein.

68. Apple represented to early purchasers that the iPhone was worth the price that they had paid for.

69. Just two months after their purchases, Apple stopped further production of the 4 GB model and reduced the price of 8 GB models.

70. Thus Apple devalued the iPhones bought by early purchasers.

## RELIEF REQUESTED

71. Plaintiff has exhausted any administrative remedies that may exist.

WHEREFORE, the Plaintiff demands the following relief jointly and severally against all the Defendants:

    a. Compensatory damages for Plaintiff for the amount of $1 million;

    b. Punitive damages for the Plaintiff against the individual Defendant in an amount to be determined at trial;

    c. The convening and empanelling of a jury to consider the merits of the claims herein;

    d. A court order, pursuant to 15 U.S.C. § 15, that the Plaintiff is entitled to threefold her damages, the costs involved in maintaining this action, and attorney's fees; and

    e. Such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: Queens, New York
      September 24, 2007

WANG LAW OFFICE, PLLC

By:   s/ C. Jean Wang
      C. Jean Wang, Esq.
      (CW 2747)

36-25 Main St. – Third Floor
Flushing, New York 11354
(718) 353-9264
*Attorney for the Plaintiff*

**EXHIBIT B**

# Success!
# Complaint Accepted. Thank you for your input.

| | |
|---|---|
| First Name: | Dongmei |
| Last Name: | Li |
| Age Range: | 20 - 29 |
| Street Address: | c/o Wang Law Office, Pllc |
| | 36-25 Main Street Suite 3A |
| City: | Flushing |
| State or Province: | New York |
| Country: | UNITED STATES |
| Zip Code or Postal Code: | 11354 |
| E-Mail Address: | help@meiguofa.com |
| Home Phone: | (718)3539264 |
| Work Phone: | (718)353964Ext. |
| Subject of Your Complaint: | Telephone, Cell Phone and VOIP Services |
| Name of Company You Are Complaining About: | Apple Inc. |
| Street Address: | 1 Infinite Loop |
| City: | Cupertina |
| State or Province: | California |
| Country: | UNITED STATES |
| Zip Code or Postal Code: | 95014 |
| Company Web Site: | www.apple.com |
| Phone Number: | (408)9961010Ext. |
| How Did the Company Initially Contact You?: | Mail |
| Explain Your Problem: (Please limit your complaint to 2000 characters.): | (Product Name: iPhone) We represent Dongmei Li, a permanent resident who resides in the county of Queens, State of New York. Apple Inc. ("Apple") has violated the rights of our client that are protected by 15 U.S.C. §§ 13, 13a, 14, 45(a)(1), and 47 U.S.C. § 202. Apple discriminated against our client in price, rebates, underselling, and unfair and deceptive acts and practices. |
| | Apple started selling iPhone on June 29, 2007 at 6:00 PM. Our client went to one of Apple's retail stores on or about July 2, 2007 and waited on line for hours before it was her turn. Our client was told, however, that the 8 gigabyte ("GB") model was sold out and that only the 4 GB iPhones remained. She then purchased the 4 GB iPhone. On September 5, 2007, only two months after iPhone's debut, Apple cut its 8 GB iPhone price from $599 to $399 and dropped its 4 GB version. Apple also offered various rebates to early purchasers on September 14, 2007. |

New Complaint

EXHIBIT C

## AT&T Monthly Plans for iPhone

AT&T has the largest voice and data network in America, the largest mobile-to-mobile community, and the fewest dropped calls. Now, when you sign up for a two-year service agreement, your plan will also include unlimited data (email and web), Visual Voicemail, and 200 SMS text messages.

### Individual Plans

| Monthly | $59.99 | $79.99 | $99.99 |
|---|---|---|---|
| Minutes | 450 | 900 | 1350 |
| Unlimited Data (email and web) | ✓ | ✓ | ✓ |
| Visual Voicemail | ✓ | ✓ | ✓ |
| SMS Text Messages | 200 | 200 | 200 |
| Night and Weekend Minutes | 5000 | Unlimited | Unlimited |
| Rollover Minutes | ✓ | ✓ | ✓ |
| Unlimited Mobile to Mobile | ✓ | ✓ | ✓ |

### Family Plans
Includes two lines. Additional iPhone lines are $29.99 each.

| Monthly | $109.99 | $129.99 | $149.99 |
|---|---|---|---|
| Minutes | 700 | 1400 | 2100 |
| Unlimited Data (email and web) | ✓ | ✓ | ✓ |
| Visual Voicemail | ✓ | ✓ | ✓ |
| SMS Text Messages | 200 | 200 | 200 |
| Night and Weekend Minutes | Unlimited | Unlimited | Unlimited |
| Rollover Minutes | ✓ | ✓ | ✓ |
| Unlimited Mobile to Mobile | ✓ | ✓ | ✓ |

### iPhone Data Plans
For existing customers. Includes Unlimited Data (email and web) and Visual Voicemail.

| Monthly | $20.00 | $30.00 | $40.00 |
|---|---|---|---|
| SMS Text Messages | 200 | 1500 | Unlimited |

Visit www.att.com/iphone/plans for additional rate plans.
The purchase of an iPhone does not guarantee service. Service agreement deposit, credit check and application. See a Mac Specialist for more information.
Minimum new two-year wireless service plan required for both new and existing AT&T customers to activate all iPhone features, including iPod features. AT&T also imposes monthly a Regulatory Cost Recovery Charge of up to $1.25 to help defray costs incurred in complying with state and federal telecom regulations; State and Federal Universal Service Charges; and surcharges for customer-based and revenue-based state and local assessments on AT&T.

EXHIBIT D

at&t

att.com    Wireless Home    Personal    Business Center    About Us    My Account
Find a Store    Coverage Viewer    Español    Cart    Search

About Us
  Cingular History
Meet Us
Contact Us
Our Technology
Newsroom
Community Support
Careers
  Company Overview
  Why Work for AT&T
  Career Possibilities
  Getting Started
  Student Relations
  Job Search/Apply
  AT&T Jobs
Doing Business with AT&T
  Supplier Diversity
  Local Dealer Program
Alliances
  Business Alliance Partner Program
  Developer Alliance Program
Disability Resources

## About Wireless Services from AT&T, Formerly Cingular

Wireless from AT&T, formerly Cingular Wireless, is the largest wireless company in the United States, with more than 70 million subscribers who use the nation's largest digital voice and data network. AT&T is dedicated to providing customers with wireless technology designed to enrich their lives.

### Vision

To be the most highly regarded wireless company in the world, with a driving focus around best-in-class sales and service.

### Values

Customers: We value our customers and treat them with respect, providing friendly, courteous, knowledgeable, and prompt service at all touch points. We seek and are driven by our customers' feedback.
Integrity: We operate with unyielding integrity, obeying all laws and adhering to a stringent code of business conduct. We will not tolerate unethical business conduct by our team members.
Performance: We continually raise our performance to exceed customer and shareholder expectations. We strive to be the best wireless company in the world.
Teamwork: We partner with one another—respecting new viewpoints, building trust, enhancing communications, and sharing best practices to deliver world-class products and services.
People: We value our team members and treat them with respect, providing an environment where diverse individuals can develop and are expected to perform to their full potential.

### Ownership

AT&T is solely owned by AT&T Inc. (NYSE: T) now that the merger between its former parent companies, AT&T Inc. (formerly SBC) and BellSouth (NYSE: BLS) has closed.

### Revenues

Year 2007 revenue was $42.7 billion.

### The Wireless Advantage

- The country's largest and fastest digital voice and data network—the ALLOVER™ Network—which covers the top 100 U.S. markets and more than 293 million people throughout the U.S.
- Unlimited calling within the largest mobile-to-mobile calling community—70 million people and growing.
- Rollover®, AT&T's exclusive offer on our wireless plans that allow customers to keep their unused Anytime Minutes from month to month.
- An unprecedented selection of handsets and devices to meet every need in the U.S. and while traveling.
- The largest international coverage of any U.S. carrier, giving customers the ability to make calls on 7 continents in more than 195 countries and on 75 major cruise ships, with wireless data roaming for laptops, PDAs, and other data services in more than 140 countries. AT&T offers more world phones than any other U.S. carrier.
- Cutting-edge data products and services and access to exclusive content from the top names in media and entertainment.
- The best pay-as-you-go offering with GoPhone®.
- A simplified yet comprehensive service summary that spells out exactly what customers are buying and estimated future bills.
- Friendly, high-quality service at every AT&T location.
- A 30-day, no-questions-asked return policy nationwide lets you test out AT&T service stress-free.

In addition, wireless from AT&T serves 95 percent of the Fortune 100 companies and counts more than 80 percent of the Fortune 500 and more than 1200 federal, state, and local government agencies as customers.

### Headquarters

AT&T Mobility
Glenridge Highlands Two
5565 Glenridge Connector
Atlanta, GA 30342

1-800-331-0500
1-866-241-6567 TTY/TDD

AT&T Inc. Headquarters
AT&T Inc.
175 E. Houston St.
San Antonio, TX 78205

Careers    Contact Us    Site Map    Other Wireless Sites    Privacy Policy    Terms of Use    Wireless Service Agreement    Cingular History
att.com    Wireless Home    Personal    Business Center    About Us    My Account
YELLOWPAGES.COM

©2008 AT&T Intellectual Property
All rights reserved. AT&T, AT&T logo and all other marks contained herein are trademarks of AT&T Intellectual Property and/or AT&T affiliated companies.