UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LI XI, DERRICK SEMENEH, TONY TRAN,                    CASE NO 07-CV-4005
Individually and On Behalf of All Others
Similarly Situated,

                                                                                            **AMENDED**
                                                   Plaintiff,         **CLASS ACTION**
                                                                                          **COMPLAINT**

     -against-

APPLE INC.;
STEVE JOBS, Chief Executive Officer of Apple Inc.;     **JURY TRIAL**
AT&T INC;                                                                                **DEMANDED**
AT&T MOBILITY LLC.

                         Defendants.
------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1. This is a civil action in which the plaintiffs, Li Xi, Derrick Semeneh, Tony Tran, seeks relief for the defendants' violation of their rights secured by 15 U.S.C. §§ 13, 13a, 14, 45(a)(1), and 47 U.S.C. § 202.

2. Plaintiffs, individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for their complaint against defendants, alleges the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of the defendant's public documents, announcements made by defendants, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

3. This is a federal class action on behalf of purchasers of the Apple iPhone between June 29, 2007 to September 5, 2007, inclusive (the "Class Period"), seeking to pursue remedies under Robinson-Patman Act, Clayton Act, Telecommunications Act, Unfair and Deceptive Acts and Practices, Consumer Protection from Deceptive Acts and Practices.

Dockets.Justia.com

## JURISDICTION

4. This action arises under 15 U.S.C. §§ 13, 13a, 14, 45(a)(1), and 47 U.S.C. § 202.

5. Jurisdiction is conferred upon this Court by 15 U.S.C. § 15, this being an action seeking redress for price discrimination, discrimination in rebates, underselling, sale on agreement not to use competitor's goods, unfair and deceptive acts and practices, telecommunications charges or service discrimination.

6. Plaintiffs' claim for damages is authorized by 15 U.S.C. § 15. Plaintiffs further invoke this Court's pendant jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy. Plaintiffs demand a trial by jury on each and every one of their claims as pled herein.

## VENUE

7. Venue is proper for the United States District Court for the Eastern District of New York pursuant to 15 U.S.C. § 15 because defendants have agents in Nassau County and Queens County.

## PLAINTIFF(S)

8. The plaintiff, Li Xi, is and was at all times relevant herein residing in the County of Queens, State of New York., purchased Apple iPhone during the Class Period and has been damaged thereby.

9. The plaintiff, Derrick Semeneh, is and was at all times relevant herein residing in the County of Howard, State of Maryland., purchased Apple iPhone during the Class Period and has been damaged thereby.

10. The plaintiff, Tony Tran, is and was at all time relevant herein residing in the County of Isabella, State of Michigan, purchased Apple iPhone during the Class Period and has been damaged thereby.

## DEFENDANT(S)

11. The defendant, APPLE INC. ("Apple"), was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of California, having a retail store in the State of New York for the transaction of business in New York at 630 Old Country Rd., in Garden City, County of Nassau, State of New York. Apple is headquartered at 1 Infinite Loop, Cupertino, CA 95014.

12. The defendant, STEVE JOBS, is and was at all times relevant herein, the Chief Executive Officer of Apple, whose principle work address is at 1 Infinite Loop, Cupertino, in

Silicon Valley, State of California. Defendant employs an agent for the transaction of business in New York at 630 Old Country Rd., in Garden City, County of Nassau, State of New York.

13. The defendant, AT&T Inc. ("AT&T"), was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of Texas, having a retail store in the State of New York for the transaction of business in New York at 39-09 Main St., Flushing, County of Queens, State of New York. AT&T is headquartered at 175 E. Houston, San Antonio, TX, 78205.

14. The defendant, AT&T MOBILITY LLC, was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of Georgia, having a retail store in the State of New York for the transaction of business in New York at 39-09 Main St., Flushing, County of Queens, State of New York. AT&T Mobility LLC is headquartered at Glenridge Highlands Two, 5565 Glenridge Connector, Atlanta, GA, 30342.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

15. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased Apple iPhone between June 29, 2007 and September 5, 2007, inclusive (the "Class Period") and who were damaged thereby.

16. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, iPhone sales hit 1 million in less than 3 months. There are already numerous members in the proposed Class.

17. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18. Class members, like plaintiffs, purchased iPhones from Apple intending on reselling them. They are not able to resell it at as high a profit because of Apple's reduction in the price of the iPhone and were forced to switch to AT&T because Apple conditioned its sale of the iPhone upon such subscription. Class members were charged unreasonable amounts for these wireless service contracts.

19. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

20. A decision by any Judge that defendants' acts in the sale of the iPhone did not violate federal antitrust and anticompetitive laws would be the death knell for the many other purchasers of the iPhone throughout the country.

21. There are no questions affecting individual members but only the common facts of the sale and purchase of the iPhone, and thus the common laws that these acts violate predominate.

22. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

23. A class action would be the most efficient method for litigating the issues compared to a multiplicity of duplicative discovery and motion practice. In addition, the desirability of concentrating the litigation of these issues in one jurisdiction rather than spreading them out throughout the multitude of district courts in the U.S. with class members.

## STATEMENT OF FACTS

24. On June 29, 2007 at 6:00 PM, Apple and/or Steve Jobs decided to start selling its newest product, iPhone, in two models, an 8 gigabyte ("GB") model and a 4 GB model. Apple and/or Steve Jobs hyped up iPhone and indicated that it is a revolutionary product long before iPhone's debut.

25. On or about July 2, 2007, Plaintiffs went to one of Apple's retail stores to purchase an 8 GB iPhone for $599. Plaintiffs waited on line for hours. Plaintiffs purchased more than one phone.

26. Plaintiffs had to sign up for a two-year contract with AT&T and/or AT&T Mobility LLC to have wireless service on their new iPhone because AT&T and/or AT&T has received an exclusive contract from Apple to be the iPhone's sole wireless service provider.

27. Some customers were told to switch their existing AT&T and/or AT&T Mobility LLC account to a more expensive plan designed for iPhone in order to activate the phone. *See* Markoff, John, *For iPhone, Some Shortages and Activation Problems,* New York Times (July 2, 2007).

28. On August 24, 2007, George Hotz broke the iPhone code thereby allowing later purchasers of iPhone to subscribe their iPhone with other carriers of wireless service.

29. Apple's stock prices were on the rise on and before September 5, 2007.



Chart based upon compilation of stock closing prices. *See AAPL: Historical Prices for Apple Inc.*, Yahoo! Finance (Sept. 24, 2007), *at* http://finance.yahoo.com.

30. On September 5, 2007, about two months after iPhone's debut, Apple and/or Steve Jobs announced the company was cutting the price of its 8 GB iPhone.

31. Apple and/or Steve Jobs also announced that it would no longer produce the 4 GB version on September 5, 2007.

32. Apple and/or Steve Jobs insisted that the price cut had been planned long ago and explained that cutting the price only after two months of iPhone's debut is to fit in the holiday season to broaden the market. *See* Markoff, John, *Apple Cuts iPhone Price Ahead of Holidays,* New York Times (September 6, 2007).

33. Many buyers reacted angrily to Apple's price cut. *See iPhone Price Cuts Lead to iAnnoyed iCustomers*, WRAL (Sept. 8, 2007), *available at* http://www.wral.com/business/blogpost/1792406/.

34. On September 14, 2007, Apple and/or Steve Jobs offered various rebates to early iPhone purchasers.

35. Apple's and/or Steve Jobs' price reduction has hurt early purchasers' competition with Apple because they cannot resell it for as high a profit as they could have before the price cut.

36. Apple's and/or Steve Jobs' price reduction has hurt early purchasers' competition with later purchasers because they cannot resell their iPhones for as low a price as later purchasers may.

## STATEMENT OF CLAIMS

### FIRST CLAIM

**(Violating 15 U.S.C. § 13
Price Discrimination)**

37. Plaintiffs and other members of the class incorporate by reference the allegations set forth in Paragraphs 1 through 36 as is fully set forth herein.

38. Apple and/or Steve Jobs discriminated in price between plaintiffs and other members of the class and later purchasers of the 8 GB iPhone because within just two months after Apple and/or Steve Jobs sold its 8 GB iPhone for $599, it reduced its price by $200 to $399.

39. Apple and/or Steve Jobs sold its iPhones in the course of commerce.

40. Apple and/or Steve Jobs sold its iPhones for use in the U.S.

41. Plaintiffs and other members of the class competed with later purchasers for the iPhone.

42. Apple's and/or Steve Jobs' discrimination in price between plaintiffs and other members of the class and later purchasers substantially caused plaintiffs and other members of the class to be injured because they cannot resell their iPhones for the same profit as later purchasers.

43. Apple and/or Steve Jobs discriminated in rebates between class members who purchased iPhones before August 22, 2007 and class members who purchased iPhones in the period of August 22 to September 4, 2007.

44. Class members in the period of August 22 to September 4, 2007 are protected by Apple's "price protection policy," whose terms and conditions are that they can get a refund or credit of the difference between the price they were charged and the current selling price. Therefore, the class members in this period can get full $200 back. *See Apple Sales and Refund Policy,* Apple Inc. (September 24, 2007), *at* http://store.apple.com/Catalog/US/Images/salespolicies.html.

45. Class members before August 22, 2007, however, can only get $100 store credit to purchase anything from the store other than iTunes. *See Today in Business,* Bloomberg News (September 15, 2007).

46. Apple and/or Steve Jobs discriminated in discount between class members of the 4 GB

6

iPhone and later purchasers of the 8 GB iPhone because within just two months after Apple sold its cheaper 4 GB iPhone, it stopped production of its cheaper iPhone model.

47. The difference in the rebate that Apple and/or Steve Jobs offers class members of 8 GB iPhone discriminates against class members of the 4 GB iPhone because they are offered less favorable terms.

48. Apple and/or Steve Jobs discriminated in the rebates it offered to early and later purchasers of iPhone in September 2007.

49. Market conditions did not require Apple and/or Steve Jobs to change its price. iPhone was selling very well because Apple's stocks were increasing since August 16, 2007 and rose as high as $144.16 on September 4, 2007, the day before Apple and/or Steve Jobs announced that it was cutting the price of iPhone. *See* Yahoo! Finance, *supra* ¶ 14.

## SECOND CLAIM

**(Violating 15 U.S.C. § 13a
Discrimination in Rebates)**

50. Plaintiffs and other members of the class incorporate by reference the allegations set forth in Paragraphs 1 through 49 as is fully set forth herein.

51. Apple and/or Steve Jobs is engaged in commerce.

52. Apple and/or Steve Jobs discriminated in rebates between class members who purchased iPhones before August 22, 2007 and class members who purchased iPhones in the period of August 22 to September 4, 2007.

53. Purchasers in the period of August 22 to September 4, 2007 are protected by Apple's "price protection policy," whose terms and conditions are that they can get a refund or credit of the difference between the price they were charged and the current selling price. Therefore, the purchasers in this period can get full $200 back. *See Apple Sales and Refund Policy,* Apple Inc. (September 24, 2007), *at* http://store.apple.com/Catalog/US/Images/salespolicies.html.

54. Class members before August 22, 2007, however, can only get $100 store credit to purchase anything from the store other than iTunes. *See Today in Business,* Bloomberg News (September 15, 2007).

55. Apple and/or Steve Jobs discriminated in discount between class members of the 4 GB iPhone and later purchasers of the 8 GB iPhone because within just two months after Apple and/or Steve Jobs sold its cheaper 4 GB iPhone, it stopped production of its cheaper iPhone model.

56. The difference in the rebate that Apple and/or Steve Jobs offers class members of 8 GB

7

iPhone discriminates against class members of the 4 GB iPhone because they are offered less favorable terms.

57. The difference in discount that Apple and/or Steve Jobs offered class members of 4 GB iPhone and later purchasers discriminates against later purchasers because they cannot obtain the same quality cellular phone at the lower price.

58. Apple and/or Steve Jobs knew of the discrimination in discount and rebates by offering the differential discounts and rebates.

THIRD CLAIM

**(Violating 15 U.S.C. § 13a
Underselling**)

59. Plaintiffs and other members of the class incorporate by reference the allegations set forth in Paragraphs 1 through 58 as is fully set forth herein.

60. Apple and/or Steve Jobs is engaged in commerce.

61. Apple's current price of $399 for its iPhone is unreasonably low.

62. The costs for Apple and/or Steve Jobs to make the 8 GB iPhone are higher than the current sales price.

63. The price of the iPhone when it debut is a more reasonable price.

64. Apple and/or Steve Jobs is selling its iPhone for an unreasonably low price to hurt competition between plaintiffs and other members of the class and later purchasers so that the plaintiffs and other members of the class cannot resell for as high a profit as they could have without the price cut.

65. Apple and/or Steve Jobs is selling its iPhone for an unreasonably low price to hurt the competition that plaintiffs and other members of the class pose to it from reselling their iPhones.

FOURTH CLAIM

**(Violating 15 U.S.C. § 14
Sale on Agreement Not to Use Competitor's Goods)**

66. Plaintiffs and other members of the class incorporate by reference the allegations set forth in Paragraphs 1 through 65 as is fully set forth herein.

67. Apple and/or Steve Jobs has an exclusive agreement with AT&T and/or AT&T

8

Mobility LLC to distribute iPhone using only AT&T's and/or AT&T Mobility LLC's cellular network. Apple and/or Steve Jobs sold iPhone to plaintiffs and other members of the class on the condition that purchasers sign up for a two-year wireless service agreement with AT&T and/or AT&T Mobility LLC. Apple and/or Steve Jobs encoded iPhone so that plaintiffs and other members of the class could only use AT&T and/or AT&T Mobility LLC as the carrier of wireless service for its iPhone.

68. The effect of Apple, Steve Jobs, AT&T, and/or AT&T Mobility LLC's prevention of plaintiff and other members of the class from subscribing their iPhones with other carriers of wireless service was to lessen purchasers' choice of wireless service carriers. Thus Apple, Steve Jobs, AT&T, and/or AT&T Mobility LLC created a monopoly on carriers for the iPhone.

69. Since George Hotz broke the encryption, purchasers since August 24, 2007 can subscribe their iPhones with other wireless service carriers.

70. Apple, Steve Jobs, AT&T, and/or AT&T Mobility LLC injured plaintiffs and other members of the class by forcing a two-year service agreement upon them with unfair terms, which later purchasers can avoid.

71. The sales of other smart phones with similar function decreased after the introduction of the iPhone.

72. Apple and/or Steve Jobs possess sufficient market power to force plaintiffs and other members of the class to sign on to AT&T and/or AT&T Mobility LLC by encoding the phone.

73. Apple and/or Steve Jobs possess sufficient market power in the cell phone market.

74. Apple and/or Steve Jobs possess sufficient market power in the computer market.

75. Apple and/or Steve Jobs possess sufficient market power in the music player market because of the iPod.

76. Apple's iPhone has crucial economic power because of its uniqueness in its attributes.

77. Apple's iPhone has crucial economic power because it is a cell phone and the newest iPod, containing iPod audio and video features.

78. Apple's iPhone has crucial economic power because iPhone is completely touch screen, a unique attribute at the time the iPhone debut.

79. Apple's iPhone has crucial economic power because huge amount of consumers waited on line to purchase iPhone when it came out on June 29, 2007.

80. Apple's iPhone has crucial economic power because over 1 million consumers purchased the iPhone in less than 3 months.

81. Apple's iPhone is patented and copyrighted.

82. Apple and/or Steve Jobs enjoy sufficient economic power in the cell phone market because over 1 million consumers purchased the iPhone in less than 3 months.

83. Apple and/or Steve Jobs enjoy sufficient economic power because it can be used as function of a cell phone and an iPod.

84. Apple's iPhone has crucial economic power because iPhone is completely touch screen, a unique attribute at the time the iPhone debut.

85. Apple's economic power in the cell phone market restrained competition in wireless service market by forcing plaintiff and other members of the class to sign on to AT&T and/or AT&T Mobility LLC by encoding or locking the phone.

86. Apple's economic power in the cell phone market restrained competition in wireless service market by preventing plaintiff and other members of the class to subscribe to other wireless services they preferred since they imposed two-year contract and $175 early-termination fees.

87. Apple's economic power caused a large portion of wireless subscribers to switch from other carriers to AT&T and/or AT&T Mobility LLC.

88. Apple's economic power in the cell phone market caused AT&T and/or AT&T Mobility LLC to have a large number of subscribers.

89. The tying of the iPhone with AT&T and/or AT&T Mobility LLC service related to the sale of goods because iPhone that plaintiff purchased could not operate without AT&T and/or AT&T Mobility LLC service.

## FIFTH CLAIM

### (Violating 15 U.S.C. Sec. 45(a)(1) defined in 15 U.S.C. Sec. 45(n) Unfair and Deceptive Acts and Practices)

90. Plaintiffs and other members of the class incorporate by reference the allegations set forth in Paragraphs 1 through 89 as is fully set forth herein.

91. Plaintiffs and other members of the class of iPhone paid an extra $200 for the same product than purchasers two months later.

92. Plaintiffs and other members of the class are stuck with two-year wireless service contract with AT&T and/or AT&T Mobility LLC because it was the condition for the purchase of the iPhone.

93. Plaintiffs and other members of the class of the 4 GB iPhone were denied the option of purchasing the 8 GB iPhone, which has more memory capacity, because on just a few days after iPhone debut, Apple and/or Steve Jobs told purchasers that 8 GB were sold out and that they could

10

only purchase the 4 GB. Apple and/or Steve Jobs did not tell purchasers when more 8 GB iPhones would be produced.

94. Apple and/or Steve Jobs has devalued the 8 GB iPhones that plaintiffs and other members of the class bought by lowering its price $200 just two months after their purchase.

95. Apple and/or Steve Jobs has devalued the 4 GB iPhones that plaintiffs and other members of the class bought by stopping further production of the 4 GB model just two months after their purchase.

96. Plaintiffs and other members of the class suffer substantial injury when Defendants have planned the price cut early and chose not to disclose the information.

97. Plaintiffs and other members of the class of the 4 GB iPhone cannot switch to the 8 GB iPhone because it would result in the loss of their investment due to the large price differential between the price of iPhone when it debut and its current price.

98. Plaintiffs and other members of the class of the iPhone cannot switch carriers because Apple, Steve Jobs, AT&T, and/or AT&T Mobility LLC forced them to enter into a two-year wireless service contract.

99. The injury to plaintiffs and other members of the class of iPhone is not outweighed by the lower prices that later purchasers enjoy because Apple and/or Steve Jobs did not need to injure the plaintiffs and other members of the class to provide this benefit to later purchasers. Apple and/or Steve Jobs could have offered the same lower price to plaintiffs and other members of the class and allowed all consumers to benefit from the lower price.

100. Apple's and/or Steve Jobs' price reduction has hurt its competition with plaintiffs and other members of the class because they cannot resell it for as high a profit as they could have before the price cut.

101. Apple's and/or Steve Jobs' price reduction has hurt plaintiffs and other members of the class's competition with later purchasers because they cannot resell their iPhones for as low a price as later purchasers may.

102. Plaintiffs have exhausted all administrative remedies.

### SIXTH CLAIM

**(Violating 47 U.S.C. § 202
Telecommunications Charges or Service Discrimination)**

103. Plaintiffs and other members of the class incorporate by reference the allegations set forth in Paragraphs 1 through 102 as is fully set forth herein.

104. AT&T and/or AT&T Mobility LLC are/is a common carrier.

105. AT&T and/or AT&T Mobility LLC sold its wireless service in connection with the unjust and unreasonable higher prices of iPhone to plaintiffs and other members of the class.

106. Defendant AT&T and/or AT&T Mobility LLC imposed contract and $175 early-termination fees to plaintiffs and other members of the class, prevent them from using other like communication service is unfair and deceptive.

## SEVENTH CLAIM

**(Violating General Business Law of the State of New York § 349 Consumer Protection from Deceptive Acts and Practices)**

107. Plaintiffs and other members of the class incorporate by reference the allegations set forth in Paragraphs 1 through 106 as is fully set forth herein.

108. Apple and/or Steve Jobs represented to plaintiffs and other members of the class that the iPhone was worth the price that they had paid for.

109. Just two months after their purchases, Apple and/or Steve Jobs stopped further production of the 4 GB model and reduced the price of 8 GB models.

110. Thus Apple and/or Steve Jobs devalued the iPhones bought by plaintiffs and other members of the class.

**RELIEF REQUESTED**

111. Plaintiffs and other members of the class have exhausted any administrative remedies that may exist.

WHEREFORE, the Plaintiffs and other members of the class demand the following relief jointly and severally against all the Defendants:

    a. Compensatory damages for Plaintiffs and other members of the class for the amount of $1 million;

    b. Punitive damages for the Plaintiffs and other members of the class against the individual Defendant in an amount to be determined at trial;

    c. The convening and empanelling of a jury to consider the merits of the claims herein;

    d. A court order, pursuant to 15 U.S.C. § 15, that the Plaintiffs and other members of the class is entitled to threefold their damages, the costs involved in maintaining this action, and attorney's fees; and

    e. Such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: Queens, New York
      May 22, 2008

          WANG LAW OFFICE, PLLC

          By: __s/ C. Jean Wang_____
              C. Jean Wang, Esq.
              (CW 2747)

          36-25 Main St. – Third Floor
          Flushing, New York 11354
          (718) 353-9264
          *Attorney for the Plaintiffs*