UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LI XI, DERRICK SEMENEH, TONY TRAN,
Individually and On Behalf of All Others
Similarly Situated,

                Plaintiffs,                <u>MEMORANDUM AND ORDER</u>

   -against-                    CV 07-4005 (LDW) (ETB)

APPLE INC.;
STEVE JOBS, Chief Executive Officer of Apple Inc;
AT&T INC.;
AT&T MOBILITY LLC,

                Defendants.
-----------------------------------------------------------------x

WEXLER, District Judge

      Plaintiffs Li Xi, Derrick Semeneh, and Tony Tran bring this putative class action against

defendants Apple Inc. and Steve Jobs (collectively, "Apple") and AT&T Inc. and AT&T

Mobility LLC (collectively, "ATTM") under 15 U.S.C. §§ 13, 13a, 14 and 45(a)(1) and 47

U.S.C. § 202.  Both Apple and ATTM move to dismiss the Amended Class Action Complaint

(the "Amended Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs oppose the motions.


# I.  BACKGROUND

      For purposes of this motion, the Amended Complaint can be summarized as follows:  On

June 29, 2007, Apple began selling its newest product, the "iPhone," in two models – an 8

gigabyte ("GB") and a 4GB.  Amended Complaint ¶ 24.  Plaintiffs each bought a 4GB iPhone

from an Apple retail store days after the iPhone was first introduced.  <u>Id.</u> ¶¶ 8-10, 93.  After

plaintiffs purchased their iPhones, they activated them by subscribing to personal, two-year wireless service contracts with ATTM, the exclusive iPhone wireless service provider.  Id. ¶ 26.

On September 5, 2007, Apple announced that it would no longer produce the 4GB iPhone and was cutting the price of the 8GB iPhone from $599 to $399.  Id. ¶¶ 30-31, 38. Pursuant to Apple's "price protection policy," consumers who purchased the iPhone within 14 days of the price cut were eligible to receive a refund or credit of the difference between the price they paid and the current selling price, meaning those who purchased on or between August 22 and September 4, 2007 would receive $200 back.  Id. ¶ 44.  Consumers who purchased more than 14 days before the price cut received a $100 store credit.  Id. ¶ 45.

According to plaintiffs, the class members include all those who purchased iPhones "between June 29, 2007 and September 5, 2007."  Id. ¶ 3.  Each class member purportedly purchased an iPhone "intending on reselling" it.  Id. ¶¶ 3, 18.  Apple's decision to lower the price of the iPhone purportedly hurt these early purchasers because they "cannot resell [their iPhones] for as low a price as later purchasers may.  Id. ¶ 36; see also ¶ 100 (alleging plaintiffs "cannot resell [their iPhones] for as high a profit as they could have before the price cut").

Plaintiffs assert the following claims:  (1) first claim, for price discrimination in violation of § 2(a) of the Robinson-Patman Act ("RPA"), 15 U.S.C. § 13; (2) second claim, for discrimination in rebates in violation of RPA § 3, 15 U.S.C. § 13a; (3) third claim, for underselling in violation of RPA § 3, 15 U.S.C. § 13a; (4) fourth claim, for sale on agreement not to use competitors' goods in violation of § 3 of the Clayton Act, 15 U.S.C. § 14; (5) fifth claim, for unfair and deceptive acts and practices in violation of § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a); (6) sixth claim, for discrimination regarding

telecommunications charges or service in violation of § 202 of the Communications Act, 47

U.S.C. § 202; and (7) seventh claim, for deceptive acts and practices in violation of New York

General Business Law ("GBL") § 349.  Defendants move to dismiss all claims.[1]

## II. DISCUSSION

### A. Motion to Dismiss Standard

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected

the "oft quoted" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint

should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief."  Id. at 45-46.   The court

discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough

facts "to state a claim to relief that is plausible on its face."  Bell Atl., 127 S. Ct. at 1974.

The "plausibility" language used by the Supreme Court in Bell Atlantic has not been

interpreted by the Second Circuit to require a "universal standard of heightened fact pleading,"

but to require a complaint to "amplify a claim with some factual allegations in those contexts

where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143,

157-58 (2d Cir. 2007) (emphasis in original).  Further, courts have noted that while heightened

factual pleading is not the new order of the day, Bell Atlantic holds that a " 'formulaic recitation

of the elements of a cause of action will not do.  Factual allegations must be enough to raise a

---

[1]ATTM brought a motion to dismiss the original complaint.  After plaintiffs filed the
Amended Complaint, ATTM brought a motion to compel arbitration.  ATTM moves for
permission to withdraw the motion to compel arbitration and to restore the motion to dismiss as
against the Amended Complaint.  That request is granted.

right to relief above a speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact).' " Williams v. Berkshire Fin. Group, Inc., 491 F. Supp. 2d 320, 324 (E.D.N.Y. 2007) (quoting Bell Atl., 127 S. Ct. at 1959).

On a motion to dismiss, the court must, as always, assume that all allegations in the complaint are true and draw reasonable inferences in favor of the nonmoving party. Watts v. Servs. for the Underserved, No. 06-CV-2156, 2007 WL 1651852, *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl., 127 S. Ct. at 1974.

B.  First Claim:  Price Discrimination

Plaintiffs argue that Apple discriminated in price between plaintiffs (and the other class members) and later purchasers of the 8GB iPhone because of the price reduction, in violation of RPA § 2(a), 15 U.S.C. § 13(a).  Apple argues that this claim fails because the Amended Complaint does not sufficiently allege price discrimination within the meaning of § 2(a).

Section 2(a) provides, in relevant part:

>It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . . .

15 U.S.C. § 13(a).  To establish a claim under § 2(a),

>a plaintiff has the burden of establishing four facts:  (1) that seller's sales were made in interstate commerce; (2) that the seller discriminated in price as between the two purchasers; (3) that the product or commodity sold to the competing purchasers was of the

       same grade and quality; and (4) that the price discrimination had a
       prohibited effect on competition.

<u>George Haug Co. v. Rolls Royce Motor Cars Inc.</u>, 148 F.3d 136, 141 (2nd Cir. 1998).

Section 2(a) "addresses price discrimination in cases involving competition between different

purchasers for resale of the purchased product." <u>Volvo Trucks North Am., Inc. v. Reeder-Simco</u>

<u>GMC, Inc.</u>, 546 U.S. 164, 169-70 (2006); <u>Herndon v. Rite Aid Corp.</u>, No. 04-0300-CG-B, 2007

WL 2712978, at *5 (S.D. Ala. Sept. 14, 2007). Absent actual competition between a disfavored

purchaser and a favored purchaser, a plaintiff cannot establish the requisite injury. <u>Volvo Trucks</u>

<u>North Am., Inc.</u>, 546 U.S. at 177; <u>United Magazine Co. v. Murdoch Magazines Distrib., Inc.</u>,

279 Fed. Appx. 14, 17 (2d Cir. 2008). To have standing under § 2(a), a private plaintiff must

"make some showing of actual injury attributable to something the antitrust laws were designed

to prevent." <u>J. Truett Pane Co. v. Chrysler Motors Corp.</u>, 451 U.S. 557, 562 (1981); <u>United</u>

<u>Magazines</u>, 279 Fed. Appx. at 17. "To establish an antitrust injury, a plaintiff must show '(1) an

injury in fact; (2) that has been caused by the violation; and (3) that is the type of injury

contemplated by the statute.' " <u>United Magazine</u>, 279 Fed. Appx. at 17 n.4 (quoting <u>Blue Tree</u>

<u>Hotels, Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 220 (2d

Cir. 2004)).

      Plaintiffs assert that they were injured because they could not resell their iPhones for as

high a profit as later purchasers. However, plaintiffs do not allege that they are competitors

engaged in the business of reselling iPhones, that they are in actual competition with a favored

purchaser, or that they even resold or attempted to resell their iPhones. Moreover, the Amended

Complaint incorporates by reference the sales agreement between Apple and plaintiffs, in which

plaintiffs expressly acknowledged and agreed that they were "end user customers," and that

Apple's retail customers "may not purchase for resale."  See Amended Complaint ¶ 44.  Thus, plaintiffs fail to allege actual competition with a favored purchaser or antitrust injury.

Moreover, plaintiffs allege that the purchasers of an iPhone prior to September 5, 2007 paid identical prices and received identical terms of sale.  Apple subsequently reduced the price to all purchasers, so that all later purchasers paid the identical price and received identical terms of sale.  Plaintiffs' allegations do not describe any price discrimination, only a reduction in the price of the iPhone after their purchase.  Indeed, "a seller is free to change its prices as much and as often as it wants, provided it charges the same price to all competing customers at the same time." K-S Pharmacies, Inc. v. American Home Prods. Corp., 962 F.2d 728, 733 (7th Cir. 1992); see also A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc., 881 F.2d 1396, 1406-08 (7th Cir. 1989) (no price discrimination when seller "charged the same price to customers at the same time"); Texas Gulf Sulphur Co. v. J.R. Simplot Co., 418 F.2d 793, 806 (9th Cir. 1969) (no price discrimination when buyers "similarly situated are treated alike at the time of the transaction"). Each plaintiff bought an iPhone before September 5 for exactly the same price and under exactly the same terms as every other contemporaneous purchaser of the iPhone; each plaintiff could have purchased an iPhone after September 5 at exactly the same price and terms as every other contemporaneous purchaser.  Plaintiffs have not alleged any price discrimination, only that Apple lowered the price of the iPhone for all customers – action that is legally permissible under § 2(a).

Accordingly, plaintiffs' first claim is dismissed.

C.  Second and Third Claims:  Discrimination in Rebates and Underselling

Plaintiffs' second claim asserts that Apple discriminated in rebates between class members who purchased iPhones before August 22, 2007 and class members who purchased iPhones from August 22 to September 4, 2007, because the latter purchasers could get $200 back under Apple's price protection policy, whereas the former could only get $100 store credit. Amended Complaint ¶¶ 51-54.  Plaintiffs also assert that Apple discriminated in discounts between purchasers of the 4GB iPhone and later purchasers of the 8GB iPhone, because Apple's discontinuance of the 4GB iPhone resulted in more favorable rebates to purchasers of the 8GB iPhone than to purchasers of the 4GB iPhone.  Id. ¶¶ 55-56.  Plaintiffs further assert that the differences in the discount offered to class members that purchased the 4GB iPhone discriminates against later purchasers, because they cannot obtain the same quality cellular phone at a lower price.  Id. ¶ 57.

Plaintiffs' third claim asserts that the reduced price of the iPhone, $399, is unreasonably low, and the cost of making the iPhone is higher than the current sale price, thus hurting competition between plaintiffs (and other class members) and later purchasers, because the plaintiffs and other class members cannot resell their iPhones for as high a profit as they could have without the price cut.  Id. ¶¶ 61-64.

Plaintiffs purport to bring these claims under RPA § 3, 15 U.S.C. § 13a.  Section § 3 provides criminal penalties for, inter alia, discriminatory discounts or rebates or predatory pricing in the sale of goods, and is enforceable by the government.  Apple argues, and this Court agrees, that no private right of action exists under this section.  See Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 382 (1958); Energex Lighting Indus., Inc. v. North Am. Phillips Lighting Corp., 656 F. Supp. 914, 920 (S.D.N.Y. 1987).

Accordingly, plaintiffs' second and third claims are dismissed.

D.  <u>Fourth Claim:  Sale on Agreement Not to Use Competitors' Goods</u>

Plaintiffs' fourth claim asserts that the exclusive agreement between Apple and ATTM is an illegal "tying" arrangement in violation of § 3 of the Clayton Act, 15 U.S.C. § 14.  Pursuant to this alleged arrangement, iPhone purchasers can only use the ATTM cellular network and are subject to a two-year wireless service agreement with ATTM.  Amended Complaint ¶ 67.  Apple encoded the iPhones so that purchasers could not use other cellular networks.  <u>Id.</u>  However, George Hotz broke the encryption on August 24, 2007, allowing subsequent purchasers to use the iPhone with other wireless service providers.  <u>Id.</u> ¶ 69.  Plaintiffs assert that they were injured when they were forced into the two-year service agreement based upon unfair terms, which they claim later purchasers can avoid.  <u>Id.</u> ¶ 70.  Plaintiffs also assert that the introduction of the iPhone caused a drop in sales of other smart phones, and that Apple possesses sufficient market power to force plaintiffs and other members of the class to be subject to the ATTM agreement by encoding the phone.  <u>Id.</u> ¶¶ 71-72.  Plaintiffs further assert, <u>inter alia</u>, that based on Apple's economic power in the cellular phone market, they were prevented from subscribing to other wireless services they preferred since ATTM imposed a two-year contract and  $175 early termination fee.  <u>Id.</u> ¶ 86.  Apple argues that this claim fails because the Amended Complaint does not sufficiently allege a tying claim under § 3 of the Clayton Act.

Section 3 of the Clayton Act provides, in relevant part:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies or other commodities . . . for use, consumption or resale within the United States . . . , on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods,

> wares, merchandise, machinery, supplies or other commodities of a
> competitor . . . , where the effect of such lease, sale, or contract for
> such sale or such condition, agreement or understanding may be to
> substantially lessen competition or tend to create a monopoly in
> any line of commerce.

15 U.S.C. § 14.  This section prohibits the tying of other "goods, wares, merchandise, machinery, supplies or other commodities"; it does not apply to the tying of a "service agreement."  See Hill v. A-T-O, Inc., 535 F.2d 1349, 1354 n.3 (2d Cir. 1976); Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co., 510 F.2d 1140, 1145 (2d Cir. 1975); White Directory Publishers, Inc. v. New York Tel. Co., No. CIV-78-224, 1982 WL 1928, at * 4 (W.D.N.Y. Dec. 9, 1982).  Plaintiffs allege that their iPhone purchases were conditioned on a contract for cellular service with ATTM.  Thus, plaintiffs do not sufficiently allege a tying claim under § 3 of the Clayton Act.

Accordingly, plaintiffs' fourth claim is dismissed.

E.  Fifth Claim:  Unfair and Deceptive Acts and Practices

Plaintiffs' fifth claim asserts that plaintiffs paid $200 more for the same product as later purchasers, and that they are "stuck" with a two-year wireless service contract with ATTM and cannot change carriers because it was a condition of the purchase.  Amended Complaint ¶¶ 91-92.  Plaintiffs also assert that members of the class that purchased the 4GB iPhone were "denied the option of purchasing" the 8GB iPhone, because a few days after the debut, Apple told purchasers that the 8GB option was sold out, without notification of when more 8GB iPhones would be produced.  Id. ¶ 93.  Plaintiffs further assert that, inter alia, the 8GB iPhones were devalued by the lower price, and that the 4GB iPhones were devalued by discontinuing the model.  Id. ¶¶ 94-95.

Plaintiffs purport to bring this claim under § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which prohibits unfair methods of competition in commerce.  Apple argues, and this Court agrees, that this provision may be enforced only by the Federal Trade Commission and not by private action; competitors and consumers do not have standing to enforce this provision.  See Alfred Dunhill Ltd. v. Interstate Cigar Co., 499 F.2d 232, 237 (2d Cir. 1974) (citing Moore v. New York Cotton Exchange, 270 U.S. 593, 603 (1925); Holloway v. Bristol Myers Corp., 485 F.2d 986 (D.C. Cir. 1973)); Dolan v. Fairbanks Capital Corp., No. 03-CV-3285, 2005 WL 1971006, at *2 (E.D.N.Y. Aug. 16, 2005).

Accordingly, plaintiffs' fifth claim is dismissed.

F.  Sixth Claim:  Discrimination in Telecommunication Charges or Service

Plaintiffs' sixth claim asserts that ATTM sold its wireless services in connection with "unjust and unreasonably higher prices of iPhone to plaintiffs and other members of the class," and imposed an "unfair and deceptive" contract and an early termination fee to prevent plaintiffs and other members of the class from using other like communication services.  Amended Complaint ¶¶ 105-06.

Plaintiffs purport to bring this claim under § 202 of the Communications Act, 47 U.S.C. § 202, which provides, in relevant part:

> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

47 U.S.C. § 202(a).  " 'An inquiry into whether a carrier is discriminating in violation of

§ 202(a) involves a three-step inquiry: (1) whether the services are 'like'; (2) if they are, whether

there is a price difference between them; and (3) if there is, whether that difference is

reasonable.' "  Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atl. Corp., 294 F.3d 307, 317 (2d

Cir. 2002) (quoting Competitive Telecomm. Ass'n v. FCC, 998 F.2d 1058, 1061 (D.C.

Cir.1993)).

ATTM argues, and this Court agrees, that plaintiffs do not allege unjust or unreasonable

"discrimination" in the price or offering of "communication service," as prohibited by § 202(a).

Rather, plaintiffs allege that ATTM sold its wireless services "in connection with" a change in

the iPhone price that plaintiffs assert was "unjust and unreasonable" – but not one that is

"discriminatory" as between customers of communication services.  Given the absence of

allegations (or allegations from which reasonable inferences may be drawn) of discrimination as

between customers in connection with the price or offering of like communication services, the

complaint fails to state a claim under § 202.[2]

Accordingly, plaintiffs' sixth claim is dismissed.

G.  Seventh Claim: Deceptive Acts and Practices Under GBL § 349

Plaintiffs' remaining claim is their state law claim for violation of GBL § 349.  Given the

Court's dismissal of all of plaintiffs' federal claims, the Court declines to exercise supplemental

jurisdiction over this state law claim.

---

[2]Although this claim does not appear to be asserted against Apple, to the extent plaintiffs
assert this claim against Apple, it is also insufficient and must be dismissed.

Accordingly, plaintiffs' seventh claim is dismissed without prejudice.  <u>See</u> 28 U.S.C.

§ 1367(c)(3).


III.  <u>CONCLUSION</u>

For the above reasons, defendants' motions to dismiss the Amended Complaint are

granted.  The Clerk of Court is directed to enter judgment for defendants dismissing the

Amended Complaint and to close the file in this action.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
March 13, 2009